# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OKLAHOMA

| | |
|---|---|
| (1) VICKIE DORRELL, as Special Administrator of the ESTATE OF TERRY DALE DORRELL, <br><br> Plaintiff(s), <br><br> v. <br><br> (1) COMANCHE COUNTY FACILITIES AUTHORITY, an Oklahoma Title 60 Authority; <br><br> (2) DAVID WEBER, individually and in his official capacity as Jail Administrator of the Comanche County Detention Center; and <br><br> (3) CLIFFORD DARRINGTON, individually and in Official capacity as Lieutenant of the Comanche County Detention Center; and <br><br> (4) JOHN DOES 1-5, unknown individuals who were involved but not yet identified individually and in their official capacities as employees of Comanche County Detention Center; <br><br> Defendant(s). | CASE NO.: <br><br><br> ATTORNEY LIEN CLAIMED |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Vickie Dorrell, as Special Administrator of the Estate of Terry Dale Dorrell, Deceased, by and through her attorney of record, Ronald "Skip" Kelly, and for her Complaint and Demand for Jury Trial against the above-named Defendants, states as follows:

## JURISDICTION AND VENUE

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, against the above-named Defendants, in their individual capacities and/or as the entities in charge

of running the institution wherein the events giving rise to these causes of action occurred, and/or based on the above-named Defendants being in charge of supervising the employees, agents, officers, and all others entrusted with positions and responsibilities of the Defendants.

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper under 28 U.S.C. § 1391 (b) because the events and omissions giving rise to this Complaint occurred in Comanche County, Oklahoma.

4. The amount in controversy satisfies the jurisdictional limits of this Court as damages exceed seventy-five thousand dollars ($75,000.00) exclusive of costs, interest, and attorney fees.

5. Pursuant to the Governmental Tort Claims Act, the Plaintiff submitted Notice of Tort Claim to the Comanche County Facilities Trust on October 30, 2024.

6. Plaintiff, Vickie Dorrell, the duly appointed Special Administrator of the Estate of Terry Dale Dorrell, Deceased, is a resident of the City of Walters, Cotton County, State of Oklahoma. Terry Dale Dorrell (hereinafter referred to as "Plaintiff Dorrell") was at all material times a Detainee of the Comanche County Detention Center, Lawton, Oklahoma.

7. The Decedent, Terry Dale Dorrell, left behind one (1) minor daughter: K. D., of whom is deprived of the companionship and society of her father, due to the constitutional deprivations committed by Defendants herein.

8. Defendant, Comanche County Facilities Authority, is a public trust created and established to own, operate and manage jails, prisons, correctional and related facilities, in particular Comanche County Detention Center under the direction of the County Commissioners. The mission of Comanche County Detention Center "is to protect the citizens of Comanche County by properly detaining all persons entrusted to our custody in a safe, secure, and humane manner"

under the authority of Title 60, Oklahoma Statute 1991 §§ 176-180.4 et seq.

9. Defendant, David Weber ("David Weber" or "Administrator"), is, and has been at all times pertinent to this action, the Jail Administrator of the Comanche County Detention Center, an Okla. Stat. tit. 60, authority, and is responsible for its operations. Defendant Weber is being sued in both his individual capacity and in his official capacity for acts performed while he was the Jail Administrator of the Comanche County Detention Center. As the Jail Administrator he is the final policy maker for the Comanche County Detention Center for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Comanche County Detention. *See Brown v. Montoya*, 662 F.3d 1152, 1163-64 (10th Cir. 2011). As well as ensuing the safety and well-being of inmates detained and housed at the Comanche County Detention Center including provision of appropriate medical and mental health care and treatment to inmates needing such care.

10. Defendant, Clifford Darrington, is, and has been at all times pertinent to this action, a resident of Oklahoma and an employee at the Comanche County Detention Center with the rank of Lieutenant, upon information and belief, Lieutenant Darrington is commissioned to investigate and submit reports about all incidents of safety, threats, and any physical altercations that occur between detainees, inmates, and employees. Defendant Darrington deliberately failed to take immediate action in the face of actual and constructive knowledge of constitutional violations which led to the murder of Terry Dale Dorrell. Defendant Darrington's conduct was under the color of state law within the meaning of 42 U.S.C. § 1983.

11. Defendants DOES 1 through 5 are presently unknown to Plaintiff. Plaintiff alleges that each of Defendants DOES 1 through 5 were employed by the Comanche County Detention Center.

Plaintiff alleges that each of DOES 1 through 5 were deliberately indifferent to Mr. Dorrell's medical needs and safety, violated his civil rights, recklessly and wrongfully caused his death, and/or encouraged, directed, enabled and/or ordered other Defendants to engage in such conduct.

## FACTS

12. Plaintiff re-alleges and incorporates all material allegations in paragraphs one (1) through twelve (12), by reference herein.

13. On September 22, 2023, the District Attorney for Comanche County filed a Motion to Revoke the Suspended Sentence of Terry Dale Dorrell. The Motion stated that the Defendant had failed to pay restitution fees pursuant to 22 O.S. §991 (D)(A)(2). Mr. Dorrell was residing in West Virgina with his mother Vickie Dorell. Mr. Dorrell was under an interstate compact and was supervised by a Probation Officer in West Virginia and was in compliance with his reporting.

14. On September 26, 2023, a District Court Judge in Comanche County issued an Order for Revocation Hearing and for Warrant of Arrest. On September 27, 2023, a Bench Warrant was issued for Terry Dale Dorrell and Bond was set at $10,000.00. Terry Dorrell was transported by the Comanche County Sheriff's Office from Virginia Beach, Virginia to Comanche County Detention Center and was arraigned on August 16, 2024. Mr. Dorrell was placed in the custody of Comanche County Detention Center as a pre-trial detainee, presumed innocent and was protected by the Fourteenth Amendment due process clause and had a right to be safe while in Defendants' custody. The Plaintiffs have verified, that the decedent Mr. Dorrell was booked and classified, and was ultimately placed in a cell or pod that consisted of extreme violent offenders who had been sentenced to the Oklahoma Department of Corrections.

15. Upon information and belief, Mr. Terry Dale Dorrell was place in a cell with Tawann Richardson, and Isaiah D. Carpenter, two (2) extremely violent offenders who had been sentenced to Oklahoma Department of Corrections.

16. On May 3, 2018, Offender Tawann Richardson, was sentenced in Comanche County, Case No. CF-2017-555, Count 1: Amended to Assault and Battery with a Dangerous Weapon. He entered a plea of guilty and was sentenced to Count 1: ten (10) DOC; and Count 2: ten (2) DOC all suspended.

17. On January 30, 2024, Offender Tawann Richardson, was sentenced in Comanche County, Case No. CF-2023-240, to life without parole for the crime of: Count 1: Murder in the First Degree; Count 2: Unlawful Removal of Dead Body; and Count 3: Possession of Firearm after Former Conviction. Pursuant to a Motion to Withdraw his plea of guilty, Mr. Richardson was returned to Comanche County Detention Center for a hearing scheduled for September 19, 2024.

18. On December 19, 2023, offender Isaiah D. Carpenter, entered a plea guilty for the following crimes in Stephans County:

**Case No. CF-2021-00238:** Count 1: Burglary in the First Degree; Count 2: Attempted Escape from Arrest and Detention; Count 3: Obstructing Officer; and Count 4: Assault and Battery. Carpenter was sentenced to Count 1: ten (10) years DOC, Count 2: two (2) years DOC, Count 3: one (1) year SCJ, and Count 4: ninety (90) Days SCJ to run concurrently with Case No's.: CF-2021-239 and CF-2022-51

**Case No. CF-2021-00239:** Count 1: Aggravated Assault and Battery upon a Peace Officer, Count 2: Attempted Escape from Penal Institution; and Count 3 and 4: Prisoner Placing Body Fluid on Government Employee. Carpenter was sentenced to Count 1: twenty (25) years; Count 2:

twenty-five (25) years DOC; Count 3: two (2) years DOC; and Count 4: two (2) years DOC to run concurrently with Case No's.: CF-2021-238 and CF-2022-51.

**Case No. CF-2022-51:** Robbery Second Degree, Count 1: ten (1) years DOC to run concurrently with Case No.'s: CF-2021-238 and CF-2021-239.

19. On January 9, 2024, inmates Carpenter and Richardson conspired to escape from the Comanche County Detention Center. Lt. Salazar, Detention Officer Powell, and Sgt. Bigney was physically attacked by Richardson and Carpenter. They struck the employees with objects and leg irons, while they seized the radio from the booking counter. The Affidavit states "open these doors or we'll kill these bitches." On July 22, 2024, Carpenter entered a plea of guilty, to the offense and was sentenced to ten (10) years in DOC, Case No. CF-2024-37.

20. On July 22, 2024, offender Isaiah D. Carpenter, entered a plea of guilty for the following crimes in Comanche County:

**Case No. CF-2021-649:** Count 1: Murder in the Second Degree. Carpenter was sentenced to Live with DOC.

**Case No. CF-2024-37:** Count 1: Maiming; Count 2: Assault and Battery with a Dangerous Weapon; Count 3: Assault and Battery with a Dangerous Weapon; Count 4: Discharge of Mace, Pepper Mace or Other Deleterious Agent Against Officer; Count 5: Discharge of Mace, Pepper Mace or Other Deleterious Agent Against Officer; Count 6: Discharge of Mace, Pepper Mace or Other Deleterious Agent Against Officer; Count 7: Attempting to Escape from Prison or other than Penitentiary; Count 8: Conspiracy to Commit Escape from Prison other than Penitentiary; Count 9: Kidnapping. Carpenter was sentenced to a term of life with the possibility of parole for the crimes to run concurrently with Stephens County Case No.'s: CF-2021-238- CF-2021-239, and

CF-2022-51; and Comanche County Case No. CF-2021-649.

21. Upon information and belief, the Defendants had information available to them regarding Isaiah D. Carpenter's and Tawann Richardson's prior convictions for violent crimes, including, but not limited to murder in the first and second degree, and assault and battery with a dangerous weapon.

22. The Defendants had full knowledge that Mr. Carpenter and Mr. Richardson were violent offenders but placed Mr. Dorrell, a non-violent offender serving a sentence for failure to pay restitution fees in the same cell with Carpenter and Richardson.

23. On August 27, 2024, at approximately 19:15 hours Lieutenant Clifford Darrington received information that there were problems with detainees in Pod 235 and Cell 236. Inmates Tawann Richardson and Edward Glaze informed Lt. Darrington that a man was down in Cell 236. Lt. Darrington failed to call for emergency medical nor did he make an emergency call for additional officers to respond to Pod 235 Cell 236. Lt. Darrington told the inmates to bring the injured person to the door. The inmates refused to move the body. At approximately 19:25 hours Lt. Darrington confirmed that the "man down" was the body of Terry Dale Dorrell. Immediate emergency care was not provided with full knowledge of the seriousness of Mr. Dorrell's injuries as he lay helpless on the detention center floor in his own blood.

24. Mr. Dorrells body was received and reviewed by the Oklahoma Medical Examiner's Office on or about August 28, 2024. It was determined from the autopsy report that Mr. Dorrell sustained multiple sharp force injuries to major parts of his body, in particular at least twenty (20) sharp force injuries to his left lateral flank, at least six (6) sharp wound injuries of the lower lobe of his left lung, left hemothorax, and at least six (6) sharp force injuries of his left upper arm, and

from blunt force trauma to his head, neck, and extremities. Further stating Mr. Dorrell's cause of death as from multiple blunt and sharp force trauma and the manner of death as homicide.

25. Upon information and belief, in addition to the decision to place Plaintiff Dorrell in the same cell with Carpenter and Richardson, despite their known violent criminal history, Defendants knew the facility was overcrowded and understaffed, including the floor on which Plaintiff Dorrell and offenders Richardson and Carpenter shared a cell.

26. The Defendants were the exclusive custodians of Plaintiff Dorrell following his transfer into their custody and were charged with the responsibility of monitoring Plaintiff Dorrell and those around him to ensure that Plaintiff Dorrell's health, safety, and welfare would not be place in jeopardy while he was in the custody of the Defendants.

27. The Defendants' conduct in this matter was a deliberate indifference causing Plaintiff Dorrell to be brutally attacked, beaten, and stabbed with sharpened instruments ultimately resulting in his death.

28. Because of Defendants actions Plaintiff Dorrell suffered the following:

   a. Violation of Plaintiff's constitutional rights under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizure of the person;

   b. Conscious pain, suffering, and death.

29. The actions of the Defendants violated the clearly established and well-settled constitutional rights of Plaintiff Dorrell:

   a. Freedom from unreasonable seizure of the person;

   b. A duty to protect Mr. Dorrell from violence at the hands of other inmates, with respect to which Defendants failed to take reasonable measures to guarantee the safety of Plaintiff Dorrell and instead placed Plaintiff Dorrell into conditions posing a substantial risk of serious harm and with deliberate indifference to the health and

      safety of the Plaintiff Dorrell;

  c. Failed to maintain and perform direct supervision and monitor behavior and interactions of all inmates.

  d. Right to be free from willful and wanton neglect while in the custody and custodial care of the Defendants;

  e. Right to be free from grossly negligent treatment and handling while in the custody and custodial care of the Defendants;

  f. Right to be free from gross, reckless, and otherwise deliberate indifference to his life, health, and well-being.

30. Plaintiff Vickie Dorrell, on behalf of the estate and all individuals entitled to damages under the Oklahoma Wrongful Death Act, requests all damages that are fair and just under the circumstances, including but not limited to the following:

  a. Reasonable medical, hospital, funeral, and burial expenses;

  b. Reasonable and fair compensation for the pain and suffering the decedent experienced while he was conscious from the beginning of the attack until his death; and

  c. Losses suffered by the next of kin as a result of the decedent's death, including the following:

    i. Loss of financial support;
    ii. Loss of services;
    iii. Loss of society and companionship;
    iv. Loss of gifts and other valuable gratuities; and
    v. Other miscellaneous losses.

## COUNT I
### VIOLATION OF THE UNITED STATES CONSTITUTION
### AGAINST DEFENDANTS COMANCHE COUNTY FACILITIES AUTHORITY
### AND DAVID WEBER, JAIL ADMINISTRATOR

31. Plaintiff re-alleges and incorporates all material allegations in paragraphs one (1) through thirty (30), by reference herein.

32. As a result of their unlawful, malicious, reckless, and/or deliberately indifference acts and/or omissions, Defendants individually, and in concert, acted under color of law, but contrary to law, and deprived Plaintiff of the rights privileges, or immunities secured under the United States Constitution, to wit: Plaintiff Dorrell's right to be free from unreasonable seizure of his person; Plaintiff Dorrell's right not to be deprived of life, health, and physical and emotional well-being; Plaintiff Dorrell's right to be free from violence at the hands of other prisoners; and other rights as guaranteed by Amendments IV and XIV of the United States Constitution.

33. Defendants knew and/or should have known that they had a legal obligation to protect Plaintiff Dorrell from assault, attack, or other physical injury and knew and/or should have known that their actions and omissions created a substantial risk of serious physical injury to Plaintiff Dorrell.  With deliberate indifference to Plaintiff Dorrell's personal safety and right to be free from violence at the hands of other prisoners, Defendants failed to protect Plaintiff Dorrell from substantial risk of serious harm while in the custodial care of the Defendants, in violation of Plaintiff Dorrell's rights under the United States Constitution and 42 U.S.C. §§ 1983, 1985 and 1986.

34. The deprivation of Plaintiff Dorrell's rights constituted a risk of harm so grave it violated contemporary standards of decency.

35. Defendants acted in derogation of the constitutional rights of Plaintiff Dorrell, including the right to be free from violence at the hands of other inmates, as evidenced by their deliberate indifference, willful and wanton neglect, gross negligence, and deliberate abandonment of the rights of people whom the Defendants put into custody or detention and Plaintiff Dorrell in particular.  The Defendants knew or should have known that their procedures and policies, customs

and practices which are enumerated herein and as follows were wholly defective:

   a. Inadequate screening and classification of inmates.

   b. Fostering a custom, outside of the written policy, to fail to protect those in the custodial trust of the Defendants and/or to fail to separately confine detainees known to have dangerous violent propensities, suffering from mental illness, or other serious mental health conditions;

   c. Having a policy or practice of not monitoring or of inadequately monitoring detainees known, or who should have been known, to have dangerous violent propensities, suffering from mental health conditions and/or illnesses, and other symptoms, and therefore allowing other persons in the custodial care of the Defendants to unnecessarily suffer violence at the hands of other inmates and impairment of physical health to the point that personal injuries are inflicted.

   d. Having a policy or practice of not sequestering or otherwise separating from the general prison population detainees known, or who should have been known, to have dangerous violent propensities, suffering from mental health conditions and/or illnesses and other symptoms and therefore allowing other persons in the custodial care of the Defendants to unnecessarily suffer violence at the hands of other inmates and impairment of physical health to the point that personal injuries are inflicted.

   e. Failing to properly train regarding the adequate screening and monitoring of violent and/or dangerous people and of those with mental illness, while detainees are in custody;

   f. Failing to properly train regarding the necessity of screening, secluding and/or separating persons with known dangerous violent propensities, severe medical and/or mental conditions from others in the custodial care of the Defendants, and/or from otherwise making proper notation, inquiry and appropriate notification to the proper persons regarding necessary medical care, attention, seclusion and/or separation required by those in custody in order to avoid causing harm to others in the custodial care of the Defendants, including violence at the hands of other inmates;

   g. Failing to supervise civilians working with, and sworn members of, the Comanche County Detention Center, who are the custodians of detainees and decision-makers with respect to appropriate screening and placement of detainees within the Comanche County Detention Center, to ensure they provide adequate, necessary and required custodial safety measures, and do not allow detainees to suffer impairment of physical health to the point of

      suffering personal injuries as a consequence, including violence at the hands of other inmates.

    h. Failing to discipline and/or otherwise take appropriate action with respect to civilians working with, and sworn members of, the Comanche County Detention Center, who are the custodians of detainees and decision-makers with respect to appropriate placement of detainees within the Comanche County Detention Center, and who neglect those in their custody by failing to properly monitor detainees, failing to provide adequate, necessary and required custodial safety measures, and allowing detainees to suffer impairment of physical health to the point of suffering personal injuries as a consequence, including violence at the hands of other inmates

36. These policies, customs and practices were carried out with deliberate indifference, willful and wanton disregard and with gross negligence, and were the direct and deliberate cause of the constitutional deprivations of the Plaintiff Dorrell of his rights to liberty, due process, to be free from gross, reckless, and otherwise negligent endangerment of life, health, and physical well-being, and right to fair and just treatment.

## COUNT II
### FEDERAL STATUTORY AND UNITED STATES CONSTITUTIONAL VIOLATIONS AGAINST THE INDIVIDUAL

37. Plaintiff re-alleges and incorporates all material allegations in paragraphs one (1) through thirty-six (36), by reference herein.

38. Plaintiff claims damages for wrongful death, conscious pain and suffering, physical injuries, and all other damages alleged herein, under 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments to the United States Constitution as well as any other analogous provisions of the United States Constitution, against all individual John Doe Defendants for violation of Plaintiff Dorrell's constitutional rights under color of law.

## COUNT III
### WRONGFUL DEATH AS TO PLAINTIFF DECEDENT, TERRY DALE DORRELL

39. Plaintiff re-alleges and incorporates all material allegations in paragraphs one (1) through thirty-eight (38), by reference herein.

40  The grossly negligent acts and/or omissions of Defendants, as set forth above, resulted in the wrongful death of Terry Dale Dorrell.

41. This Wrongful death claim is cognizable under 12 O.S. § 1053.

42. Decedent's estate incurred medical, funeral, and burial expenses for which Defendants are liable.

43. Vickie Dorrell, as Special Administrator of the Estate of Terry Dale Dorrell, Deceased, seeks all economic and non-economic damages allowed under the Oklahoma Wrongful Death Act, 12 O.S. § 1053.

44. Plaintiff Dorrell's heirs seek damages as a result of Plaintiff decedent's death as allowable under the Oklahoma Wrongful Death Act. These include, but are not limited to, any descendants or heirs under the Oklahoma Wrongful Death Act.

45. As a direct and proximate result of the grossly negligent acts and/or omissions committed by Defendants, Plaintiff suffered and continues to suffer severe damages.

## COUNT IV
### FAILURE TO PROTECT AND DELIBERATE INDIFFERENCE

46. Plaintiff re-alleges and incorporates all material allegations in paragraphs one (1) through forty-five (45), by reference herein.

47. The Comanche County Facilities Authorities and Jail Administrator were aware and was given notice of the safety deficiencies that existed and failed to take reasonable steps to prevent

a substantial risk of harm.

48. The frequency of serious physical assaults, which often results in hospitalization or death---including assaults with weapons; assaults by multiple individuals on single victims; and sexual assaults---indicates severe and systemic lapses in security operations at the Detention Center. On September 22, 2021, Oklahoma State Department of Health (OSDH) conducted an unannounced annual inspection and identified the following deficient practices at the Comanche County Detention Center based on observation and record review, and based on the violations cited the facility is not in substantial compliance: [See Exhibit "1"]

### Detention Facilities-Hourly Site Checks

a. The facility failed to conduct at least one (1) visual sight check every hour. Review of suicide watch logs revealed site checks are not being documented every fifteen minutes or on an hourly basis.

### Detention Facilities-Bunks/Storage by Sq. Foot

a. The facility failed to provide bunks and storage as indicated by square feet. Inmates being housed in day rooms of several pods. The inmates in the pod are sleeping on a mat in a plastic boat. Boats are for temporary use and should only be used when there is required space available for the dimensions of the BOAT and the occupant.

### Detention Facilities-Dayroom Requirements

a. The facility failed to provide a day room separate and distinct from the sleeping area but immediately adjacent and accessible. Inmates were being housed in day rooms of several pods and sleeping in plastic boats used for a bed.

49. On September 15, 2022, Oklahoma State Department of Health (OSDH) conducted an unannounced annual inspection and identified the following deficient practices at the Comanche County Detention Center based on observation, interview and record review, and based on the violations cited the facility is not in substantial compliance: [See Exhibit "2"]

**Detention Facilities-Hourly Site Checks**

a. The facility failed to conduct at least one (1) visual sight check every hour.

**Detention Facilities-Food Item Record Keeping**

a. The facility failed to maintain the meal record in a manner that is retrievable for review and maintained for a minimum of one (1) month.

**Detention Facilities-Observation MED/PSY Risk**

a. The facility failed to frequently observe an inmate whose screening indicated a significant suicide risk.

**Detention Facilities-First 40sq; Second 20sq**

a. The facility failed to ensure the number of inmates in a cell did not exceed the square feet required for each occupant. The facility failed to ensure the number of inmates in the facility did not exceed the facility's rated capacity. The census at the time of the inspection was 311, and the rated capacity is 283. As a result not each inmate is provided a bunk for sleeping.

**Detention Facilities-Bunks/Storage by Sq Foot**

a. The facility failed to provide bunks and storage as indicated by square feet for each occupant. The facility failed to ensure the number of inmates in the facility did not exceed the facility's rated capacity. The census at the time of the inspection was 311, and the rated capacity is 283. As a result not each inmate is provided a bunk for sleeping.

**Detention Facilities-Showers Hot/Cold Water**

a. The facility failed to provide showers at a ratio of at least one (1) shower to twenty (20) inmates.

50. On August 23rd and August 30th, 2023, Oklahoma State Department of Health (OSDH) conducted unannounced annual inspections and identified the following deficient practices at the Comanche County Detention Center based on observation, interview, record review, and based on the violations cited, the facility is not in substantial compliance: [See Exhibit "3"]

**Detention Facilities-Classify/Assign Housing**

a. The facility failed to follow written policies and procedures for the classification and assignment to a housing unit.

**Detention Facilities-Hourly Site Checks**

a. The facility failed to conduct at least one (1) visual sight check every hour which shall include all areas of each cell, and such sight checks shall be documented. Review of the facilities electronic log, from 08/21/23, 4:00 p.m., to 08/25/2023 8:00 a.m., revealed few notations of a visual "Sight Check" being conducted hourly. There were entries found in the log for "Post Check", and "Visual Check" with six (6) "Sight Checks" being missed, ranging from one (1) hour to three (24) hours in length.

**Detention Facilities-Staff Respond PHYS/CCTV**

a. The facility failed to maintain an intercommunication system that terminates in a location that is staffed twenty-four (24) hours a day and is capable of providing an emergency response.

**Detention Facilities-Health/RX Requirements**

a. The Facility failed to document medical reception information, current illnesses and health problems including medications taken and any special health requirements.

51. On May 14, 2024, Oklahoma State Department of Health (OSDH) conducted an unannounced annual inspection and identified the following deficient practices at the Comanche County Detention Center based on observation, interview and record review, and based on the violations cited found the facility is not in substantial compliance: [See Exhibit "4"]

**Detention Facilities-Classify/Assign Housing**

a. The facility failed to have written policies and procedures for the classification and assignment to a housing unit.

**Detention Facilities-Count at Start of Shift**

a. The facility failed to develop and implement written policies and procedures for the safety, security and control of staff, inmates and visitors.

**Detention Facilities-Hourly Site Checks**

a. The facility failed to conduct at least one (1) visual sight check every hour which shall include all areas of each cell, and such sight checks shall be documented. Review of the Master Control and Third Floor Control logs dated 05/12/24, 05/13/24, and 05/14/24, revealed few notations of a visual "Sight Check" being conducted hourly for all inmate living areas.

**Detention Facilities-Notify Serious Injury**

a. The facility failed to notice the Oklahoma State Department of Health (OSDH) of a serious injury to an inmate who required outside medical treatment.

**Detention Facilities-Kept Clean Condition**

a. The facility failed to maintain an acceptable level of sanitation consistent with the requirements of Title 57 O.S. § 4. Observed visible signs of uncleanliness, build-up of dirt, debris and black residue in inmate living areas.

**Detention Facilities-Housekeeping Plan**

a. The facility failed to develop a housekeeping plan for the facility that includes a cleaning schedule with specific duties.

**Detention Facilities-Floors Clean/Dry/Clear**

a. The Facility failed to ensure floors were maintained clean, dry and free of hazardous substances.

**Detention Facilities-Issue Cleanable Mattress**

a. The facility failed to ensure that a mattress with a cleanable surface is issued to each inmate.

**Detention Facilities-Clothing Exchange Weekly**

a. The facility failed to give an inmate the opportunity to receive a complete change of clothing at least one (1) time each week.

**Detention Facilities-Clean Bedding/Towels**

a. The facility failed to provide clean bedding and towels at least one (1) time each week.

**Detention Facilities-Shower x3/Daily Food SVC**

a. The facility failed to provide inmates the opportunity to bathe at least three (3) times each week.

**Detention Facilities-Safety Fire Prevention**

a. The facility failed to maintain the automatic fire alarm and heat and smoke detection system and to ensure the Fire Safety compliance standards are maintained in accordance with the Oklahoma State Fire Marshal, as provided in Title 74 O.S. § 317 et seq. This has the potential to affect the safety and lives of all occupants housed in this facility in the event of a fire emergency.

**Detention Facilities-Material Fire Compliance**

a. The facility failed to ensure facility furnishings, walls, ceilings and floors are constructed of materials that meet the code requirements of the Oklahoma State Fire Marshal, as provided in Title 74 O.S. § 317 et seq. This has the potential to affect the health and safety of the two-hundred and forty-eight (248) inmates residing in the facility and staff.

**Detention Facilities-Observation MED/PSY Risk**

a. The facility failed to frequently observe an inmate whose screening indicated a significant medical problem.

**Detention Facilities-Document Medical/RX**

a. The Facility failed to document the administration of medications, the date, time and place of the medical encounters.

**Detention Facilities-Document RX Dispensing**

a. The facility failed to log, provide and administer appropriate prescription medications to the inmate as directed by a physician or designated medical authority.

**Detention Facilities-MIN 20 Foot Candles**

a. The facility failed to provide the minimum required lighting of at least twenty (20) foot candles in the inmate living areas. Measurements of light levels were taken using the REED Light Meter, Compact Series Model R1930.

**Detention Facilities-Bunks/Storage by Sq Foot**

a. The facility failed to provide bunks and storage for each inmate.

52. In an interview that occurred on December 31, 2024, between Seth Marsicano, Channel 7 News, with former Jail Administrator Bill Hobbs, concerning the increased number of deaths and overcrowding at the Comanche County Detention Center. Former Administrator Hobbs stated "when the county moved into the new jail, in January 2004, we moved 160 inmates over here from a jail that housed somewhere around 90 inmates. It didn't take a year and half after that, and we're overcrowded. They just keep coming. Inmates coming into jail nowadays are a lot more violent, I don't know what causes it, but they're more violent now than they were 20 years ago even though the charges may be the same." An open Record request revealed a spike in 2023 compared to the previous ten years. Going from one death every two years to one every two months. As of December 4, 2024, four (4) deaths occurred: Taylor Specht, Cari Warner, Terry Dorrell, and Jackie Burnett. [See Exhibit "5"]

53. The Eight and Fourteenth Amendments impose "certain basic duties on prison officials," including taking "reasonable measures to guarantee the safety" of convicted individuals and pretrial detainees. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). The Defendants inadequate responses to violence clearly establish a failure to protect from the deliberate indifference to the safety of inmates housed in the facility.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant Plaintiff the following relief:

a. Award compensatory damages in excess of One Million ($1,000,000.00) Dollars:

b. Award punitive and/or exemplary damages;

c. Award actual costs, interest, and attorney fees;

d. Award all damages allowed under the Oklahoma Wrongful Death Act including economic damages and loss of society and companionship;

e. Grant such other relief consistent with law and which this Honorable Court deems just and proper under the exercise of its discretion.

Dated this 6th day of June 2025.

                                       Respectfully Submitted,

                                       /s *Ronald Kelly*
                                       RONALD "SKIP" KELLY, OBA # 4976
                                       205 NW 63rd Street, Ste. 150
                                       Oklahoma City, OK 73116
                                       Phone: (405) 235-1976
                                       Fax: (405) 286-6316
                                       Email: kellyron01@yahoo.com
                                       ATTORNEY FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED**